Whenever you're ready, Mr. Walsh, then you can proceed. Thank you, Your Honor. May it please the Court, Chris Walsh on behalf of Rampart Resources, Inc., the appellant. We ask the Court, as we stated in our brief, to reverse and remand for the issuance of a preliminary injunction here. We ask the Court below to issue a preliminary injunction because since 1989, Rampart Resources has been operating in the real estate and property management business using the mark, the name, Rampart Resources. That mark has been registered with the United States Patent and Trademark Office. The defendant, appellee, since 1989, has been operating in the real estate business up until 2023 under the name Latter and Bloom Property Management, various names. In March of 2023, they apparently decided to change their name in a rebranding effort and adopted the name Rampart Worth. And there's variations throughout Rampart Worth Property Management, Rampart Worth Commercial Management, Rampart Worth Multifamily Management. We didn't know about that. My client didn't know about that until their long-time FedEx delivery driver commented, I see you've opened a new location over in City Farm Office Complex. It's news to Alan Butler, the company's president and owner. To be clear, is the only overlap in the two marks the use of the word Rampart or are we talking about logos? I know in the briefing you had some, or both of you had used some of the, like letterhead or logos. Are the logos the problem or are we simply talking about use of the word Rampart in the business entity? The mark is really, the dominant mark is the Rampart, Your Honor, and that causing confusion. And the district judge asked about this. The Rampart mark is strong, what was the focus at the district court level. When you say mark, you mean the word, use of the word? Yes, Your Honor. The word mark. Yes, Your Honor. And, you know, I have to say there's some flavor here. In New Orleans, there's a Rampart street, there's a Rampart neighborhood, there's Rampart businesses. That's not the case in Baton Rouge where this originated and where this is going on. There is no Rampart street. There are no Rampart businesses or neighborhoods. And so there's a little bit of flavor that may be lost, perhaps, geographically. And so, in fact, the appellee cited a bunch of Rampart businesses, all from New Orleans, and those geographic descriptors have nothing to do when we're talking about Baton Rouge because that has a very different meaning in a different town where there is no Rampart street. But going back to the facts, after the FedEx delivery driver made that comment, not long thereafter, Mr. Butler became aware that there had been frequent calls from the tenants of the apartment buildings that the appellee manages, complaining about Section 8 vouchers, rent issues, maintenance, to Rampart Resources. And he hadn't been, he wasn't aware of that. And once he became aware of that, they started documenting the nature and the time of these calls because they were calling Rampart Resources, whether through a Google search or however they were finding it, and made those affidavits subject and went to the court for relief, as is done in this case under Rule 65, asked for the issuance of a preliminary injunction to just restore the status quo, which had been interrupted by the adoption of this name, using the Rampart mark, given that they're in the same industry. And some two months, a little more than two months later, we had a hearing, the court issued an injunction and denied the injunction. We sought the appeal rights. We believe that the district court, honest misunderstanding and misassessment of this court's precedent, but came out and that the decision of the court and the weighing of the digits of confusion, really the touchstone here, are irreconcilable with this court's  And that's the reason we ask that this court reverse and remand. Two points. I think if the court looks at the digits of the confusion, there's really no dispute that there is a federally protected trademark and that Rampart Resources is a senior user here. So I think we can dispense with that part of the two or three factor test that this court has articulated. The question is the likelihood of confusion, and that's what was the focus of the district court. And there are the seven or eight digits of confusion that this court has repeatedly said the district court should look at. The court gave weight or findings that are just hard to reconcile with other cases, and I think that was based on either a misunderstanding of the business, what they do, or in some cases where there was just no explanation, it's hard to understand what the court did. But even if the court, for whatever reason, accepts what the court did, the district court did, we come down to what this court has said repeatedly, American Century and in other cases, that when there's a balance, a close balance of the digits of confusion, the injunction should be issued in favor of the senior user. Why is that? What we're asking here is not for a ruling on the merits, final judgment. We're asking for protection for someone for thirty-five years who's operating under this name, who has invested in the mark, put value in their name, marketed it that way, and asked for protection. Really, just to restore the status quo, we didn't ask the district judge to shut down the defendant's business. We asked that they use the name that they had been using for decades or something else that they chose to change in March of twenty-three using a name that they knew was being used by Rampart Resources, and they acknowledged that at the district court, and entered a market using the name that we had been using for some thirty-some years. Going down the digits of confusion, we've briefed it, but I think that the biggest thing that jumps out, and I'll say, it's not often that we go to the court where we actually have proof of confusion. We oftentimes, and I oftentimes, have to seek Rule 65 relief with just the likelihood of  confusion, but in this instance, we had our FedEx delivery driver and seven different calls that we documented. We had more than those, and they continue to this day, but seven different instances of their own tenants that they managed calling our location to complain about something or with some issue because they thought that Rampart Resources was Rampart Worth. That's the proof of confusion that this court has repeatedly called the best evidence of likelihood of confusion, repeatedly, this court's decisions show that. That's the first factor under this court's digits of confusion test. For whatever reason, the court decided to give that little weight and said that, well, there are other factors that weigh into that. The court said last year in Rex Real Estate that even if the proof of confusion doesn't necessarily come from actual purchasers or actual consumers, that that is still evidence of proof of confusion. There were some, I think, more recent decisions from this court where there was a question about how much weight that should give, but this court said last year in Rex Real Estate that that is evidence. When they're working in the same industry, that that should be given increasing weight or increased weight by the district court. That was not given. That's just one of, I believe, for whatever reason the district court misassessed or had misguided assessment of this court's criteria and digits of confusion. The similarities of the marks, the court seemed to focus on what they considered the differences between the two marks or the logos, but the court has repeatedly said in Extreme Lashes and Elvis Presley Enterprises, you focus on the dominant characteristic,  You focus on the dominant word, the dominant part of the marks when you're considering the similarities between the marks, and that's how you did it. This court has reversed district courts for doing what the court did, which was focusing on the differences, not the similarities, because that's what confuses consumers, which is a similarity. The two marks, counsel, seems to me the singular similarity is the word, not in the design. They're both horizontal, I suppose, with the small writing below, but it's a distinctive word more than a distinctive mark, it seems to me. By that point, it's a strong mark, Judge, and I acknowledge that. We're using a word that is not a descriptive street. We're talking about a word that has been used and adopted, given protection, and for 35 years used. If I understand the court's question, it's true that Rampart is the word, but it's the dominant part of their name. They're not using, the consumers, the people who call them, are not focused on resources. They're focused on the name that they're known by, which is Rampart, who is doing the right of use or the right of way studies in the field. We still have to find that the mark is creating confusion, and it seems to me that something we have to weigh, and the district judge did weigh, is that when you look at the marks side-by-side, they are readily distinguishable . . . . . . in appearance . . . The court was honestly trying . . . . . . of the two marks. That's true, Judge, but as I think, and when she talked with Mr. Butler, who was in the courtroom, you also have to consider what's happening, and then the court said, look at the whole picture, which is, she seemed to think . . . No, no, I'm not saying that's the whole story, and I am cutting you off, but please return to it. All I'm saying is, when you're looking at the similarity of the marks as one of the factors, one of the digits, it is . . . we need to consider very carefully the district judge's decision, which may be quite reasonable that the marks themselves are not that similar. No, and Judge, I understand what your question is, but I'm also saying that we have to look how consumers are potential purchasers looking, which is, nowadays, they're typing into Google. They're typing into their phone the name, and they're not, as the district judge had for over two months, looking at the nuances or comparing them. They don't have two side-by-side. They're typing in a word, Rampart, because that's who performed their colleague's last right-of-way survey out in the field. You're almost making an argument that traditional trademark law goes by the boards because of Google, because we're not looking at marks anymore. We're looking at how would you search, and what you come up with, without the mark even being involved, is Rampart, both of your companies. I don't know what the Google search would look like, but it seems to me we are focusing on the mark, and does the mark itself create this confusion, and the other digits of confusion? Judge, actually, I think that this Court has said that word of mouth is important. I don't mean to say it's just Google. I think word of mouth is just as important here. I was using Google as an example because I think that's probably what happened with the tenants that called us, called Rampart Resources. What I really think is happening with the people who are looking for a surveyor in the field, or a right-of-way company to perform, is that's word of mouth. I think that's what's happening when they say, we used Rampart. Is it fair to say that the two businesses right now, what each business does does not overlap, but there's a potential of overlap in the future? They overlap right now, Judge. I think the Rex Real Estate talked about the potential, and that is fair game, and certainly weighs in favor of the senior user, when they are the . . . even the potential for expansion is what Rex Real Estate said, but as of today, Rampart Resources is managing, has a contract with the State Department of Transportation on the Calcasieu Highway, the right-of-way over there, to manage a shopping mall in connection with that expansion. They are overlapping today, Judge, but they will again in the future, and they have in the past. I hope that answers your question, but I think they . . . I think it's a continuum. They're there today, and they will again in the future. Going back to your question, I don't mean to suggest that it's Google, but I do think that this Court has said word of mouth is important in considering the marks and how consumers are communicating. That's another thing that I just want to mention briefly. When the district court considered that there was overlap in the consuming public, the customers who would use both customers, and she found that there was overlap, and then says that weighs against an injunction under an abuse of discretion, standard of view, or any, with no explanation, that was error. I don't see any way you can reconcile that with this Court's rulings with no explanation. At best, that should have been neutral. I think it should have weighed in favor under this Court's precedent, in favor of an injunction, but to with no explanation say that weighs against an injunction is just in conflict. The same with the similarities of the services. To give no weight to that is just hard for someone to understand what's going to happen when they seek relief. Again, for thirty-five years, they've been using this mark. We ask that the status quo be restored, and no shutdown, but just that it be restored for thirty-five years. Honestly, so that whatever the final decision of the court was, but if it was in favor of my client, it's going to make it easier to measure damages. It's the cause that we're not getting that we wonder about. So that when you're talking about irreparable damages, that's the reason behind issuing this Rule 65 relief and appropriate bond being put in place so that everything can proceed through discovery. We get answers for the questions the district court can answer. We can get that resolved. But that was the reason for the preliminary injunction request, and we think that should be remanded for a P.I. to be issued. Good morning, Your Honors. May it please the Court. Adam Yelfer, the appellee, Rampart-Worth. I want to start with this Court's review, which is under the Abusive Discretion Standard, which was mentioned in passing, if at all. This Court has previously said in future proof that it is an extraordinary case that will merit overturning a denial of preliminary injunction, and a preliminary injunction in itself is an extraordinary remedy. So in order for this Court to grant the relief that appellant is requesting, this must be a twice-exceptional case. It's got to be exceptional on both fronts, and it simply isn't. There's simply nothing exceptional about this case, Your Honor. One of opposing counsel's arguments, Judge Vitter, did find that the digits were close. Forget the count. It may depend on how you count certain things. And in that circumstance, the equities weigh in favor of the plaintiff, which has a long existing business using Rampart. What do you say to that? Well, Your Honor, they are . . . I mean, is that right on the law? Is there a case law to support that you're aware of what he argued, and if so, respond, and regardless, respond to it? I do not believe that's an accurate statement of the law, Your Honor. My colleague is citing to a non-presidential opinion that cites to a district court opinion from Texas that cites to McCarthy on trademarks from 30 years ago, I believe. So number one, I don't agree that the factors are equally balanced. And you find this, for example, which . . . Do you agree with Judge Vitter's balancing? You just would . . . I'm sorry, Your Honor? Do you agree with how she calculated each of the factors, or do you just say that it's more in your favor than opposing counsel acknowledges? Well, Your Honor, I think that fundamentally, counsel is not correctly taking into account that a neutral factor is against them when they have the burden. And while I've certainly seen no competent authority that supports their position, I believe future proof, at least indirectly, contradicts that. In future proof, there were three factors that were in favor of an injunction. One that was partially in favor of an injunction, and the rest were either neutral or against. And that was considered by the court in future proof to be essentially four against to three and a half in favor. Here we have one that was in favor, one that was somewhat in favor, and one that was slightly. So who knows how you count those exactly. Two that were neutral, and three that were against. And importantly, this is not a mathematical test where you just assign numbers to things and add them up. The court has stated repeatedly that there is no magic formula by which if you get this factor or this combination of factors, boom, you get a preliminary injunction. It is absolutely a discretionary balancing test where the balancing of factors and the weight given to each factor will vary on a case-by-case basis. And that is the sound province of the lower court's exercise of discretion. I'm pausing because I thought Your Honor had a follow-up question. I may, but not now. OK. Well, I was going to move on to another topic. I'm trying to look judicial up here. No questions. All right. But no, Your Honor. In their best situation, they've got, if you take it in the absolute most positive light to them, which is not the way this court evaluates this order, they have three in  They have five against. That is not equal. And that is not— One of the ones against them is the judge determined they were not similar. It seems to me that the word rampart is so unusual and so dominant in both marks that I really do think the UPS or FedEx or whatever it is, drivers of the world and other people are really going to be struck by that bold, not all caps, one's all caps, the other's not, word rampart in both marks. And that's what's—that's going to be recalled in the distinctions are less important than just the dominance of the word, the unusual word, whether you're in Baton Rouge or New Orleans, of rampart. And I think they may at least see some argument that there's greater similarity in the marks than the district judge allowed. Well, Your Honor, there is some similarity. I'll grant you that. But what do we look at in the law for similarity and how does that deal with my concern that it's not the colors, it's not the subordinate words, it's the big word rampart that dominates both marks that's going to be remembered? Is that relevant to the case law? Well, Your Honor, the test for similarity in the marks is sight, sound, and impression. It's worded a couple different ways, but broadly speaking, sight, sound, and impression. And during oral argument below and in the briefs, counsel conceded the only similarity was the word ramparts. And to judge Englehart's question earlier, they do not have a word mark on rampart. They have a logo mark only. And the only similarity is the word rampart. And that is certainly entitled to consideration, and the court considered that, and the court below even cited that those words might be said, and that that would be something in the sound factor that, you know, under word of mouth, people might use the word rampart, and it's the same word, so of course it will sound the same. And the court below said, yes, that is entitled to consideration. But sound or a single word alone is not under the court's words, I can't recall which case which was cited, but sound is not put on a pedestal to where if you have one word among the entirety of a mark, that that necessarily means that you then go over into a finding of these marks are similar. There are a number of third-party uses. There's a number of distinguishing characteristics in the mark. These things all must be considered to, essentially, if the court were to adopt Palin's argument, it would completely obliterate the distinction between a word mark and a logo mark if we were to say, as a matter of law, that in a logo mark that has one word which has at least some level of focus in it, that we can ignore everything else in the mark, and that if that word is used, then that's enough, and that mandates a finding of similarity. Because that's what they're arguing here, is that the use of one word mandates a finding of similarity. The judge below considered all of the factors of sight, sound, and impression, and said that the overall impression of the mark, which is the standard for similarity, is such that the consuming public of these services, which is not a FedEx driver, would not deem them to be similar, and so found that this factor weighed against an injunction. And I don't think they've provided anything that justifies disturbing that application of discretion. Let me ask you, what is your position, if we were to affirm, what would be left of the case for the district court? Is it your position that the case is over because the Lanham Act claim has been ruled on in your favor, or are there claims, I'm looking at the complaint here, unfair competition, false designation of orange in passing off and false advertising? It would seem to me that your opponent has evidence of actual confusion in the marketplace, and even if the plaintiff fell short on the injunctive relief, those claims might still be subject to litigation and monetary damages. Is that your belief as well? Your Honor touched on several points, and I want to make sure I cover them all. First, this is a denial of a preliminary injunction. It's not a dispositive final judgment. So your Honor is correct that if this is upheld, we would go back down and we would go forward. The court is deciding this on the record before them, which is the record before the lower court. If this is affirmed, they have their opportunity to conduct discovery, go forward to trial if no dispositive relief is granted, and present new evidence on the factors which they have fell short on. On the other Lanham Act claims, I do not believe those are properly before this court. The entirety of the argument below was three paragraphs in their motion. Paragraph . . . I'm not suggesting that they are before. What I'm asking about is the status once we remand the case back. Are those necessarily precluded by the judge's ruling, from what you're telling me, what you just said? I understand that they may not be based upon whatever evidence and discovery and so on and so forth after the case was sent back. We're only here on P.I., Your Honor. That's it. If Your Honor's affirmed the decision, we go back and we proceed before the district court. We have stipulated to a stay of the case pending these proceedings, but no, this is not dispositive of either the trademark or the other Lanham Act claims on . . . when it goes down to the district court. I simply wanted to . . . because Your Honor mentioned the other Lanham Act claims, it's just important to me to convey that those are not before this court. They were improperly briefed, and even if they are to be considered, they rise and fall entirely by the appellant's own argument on the likelihood of confusion, which we don't believe they have satisfied. We certainly don't believe there's reason to disturb the lower court's discretion on that factor. I'm sorry. Do I answer all parts of Your Honor's question? Okay. Thank you. I do want to touch on several kind of nuances of actual confusion, particularly in view of the clarification of the court's recent decision in Rex Real Estate . . . excuse me, because I believe that the appellant's argument improperly disregards certain of those nuances. For one thing, of the seven alleged acts of actual confusion, only one has any evidence in the record whatsoever that it was actually my client that somehow was meant by the alleged confused party, and that's with regard to the Jefferson Apartments situation. In every other instance, we have a phone call or something similar where somebody says, I'm looking for Rampart, paraphrasing. That doesn't mean that they were looking for us. There's no evidence that they were looking for us, and moreover, as this court recognized in future proof in its . . . or I'm sorry, Streamline, in its citation to Scott Fetzer Co., it has to be the defendant's use of the mark, which again is not the word Rampart, that causes the alleged confusion. So there's no competent evidence in the record that they were looking for my client in at least six out of the seven cases, and there's no evidence in the record that any alleged confusion arose out of my client's use of its Rampart multifamily management or the marks that we cited below. And that, I believe, is a critical factor that is lost in the Streamline case. For example, the two alleged . . . or the two acts of confusion that existed were directly tied to the confused consumer seeing the Streamline logo of the defendant that was an issue. Here there's no such evidence in the record. And although at times appellant says, you know, fairly that discovery hasn't happened yet, we don't have this evidence, that's true, but that's not relevant. It is their burden to marshal competent evidence to justify the extraordinary relief of preliminary injunction. If they do not have that evidence, that is not a basis to absolve them of that burden. Where do you say the injunction action fails, at the first level? Yes, Your Honor, I don't believe that this Court needs to reach factors two through four. The first thing that they have to prove, and they must prove all of them, is likelihood of confusion. Our position is that they have failed to provide evidence of likelihood of confusion. And similarly, they have absolutely failed to show that the lower court's finding that there was not sufficient proof of likelihood of confusion is clearly erroneous or abuse of discretion, rather. Why isn't it clear? I'm sorry? You said there's not sufficient evidence of confusion? Yes, Your Honor. Why is that so? Seven . . . was it seven phone calls or something like that? Well, Your Honor, no, I don't believe their evidence is. This issue of actual confusion has been an issue many times in the case law and in extreme lashes and recs and future proof and streamline. This Court has used various terminology, but one of them is fleeting mix-up of names. This is not confusion among people that are in any way the market for these services that either party provides. This is high-dollar, sophisticated client real estate services. For example, a pallant calls out that they have clients such as ExxonMobil and Intergy. These are big corporations spending an enormous amount of money. We're not having somebody, say, in the future proof case, I believe, where somebody's grabbing a can of seltzer and one says Brizzy and one says Vizzy. These are not impulse decisions, Your Honor. These are carefully calculated, carefully vetted decisions where the fact that somebody called up asking for Rampart, which may or may not have been meant for us, for . . . called because they want to complain that their water isn't working or something. That is not consumers of either service. That is a fleeting mix-up of names. No more. Moreover, it is certainly not such compelling evidence of actual confusion that the Court's finding that . . . which, by the way, the lower court found the seventh factor, actual confusion, to weigh slightly in their favor. So the Court didn't even find actual confusion in their favor. It credited their evidence and said there is some evidence of likelihood of confusion. Now, to hear Appellant's argument, they say that if you have any evidence of actual confusion then you have to say that that weighs heavily in our favor. That's a misreading of Rex and it really comes down to the standard of review. In Rex, real estate, there was a judgment of matter of law granted against the markholder that said that they could not prove likelihood of confusion because there wasn't evidence of actual confusion. So all the Court in Rex real estate said is this is some evidence of actual confusion and it must be given some credit. And so a reasonable jury could hypothetically say that actual confusion was found here. That is a much different circumstance than what's before the Court where you're on abusive discretion where the Court found that this factor weighed slightly in their favor and now they're saying that no, it's got to be strongly in their . . . I don't know exactly how much weight they think you should give it, but it's certainly not a showing of abusive discretion. There is some evidence of actual confusion. We think that evidence is minimal, but the Court credited it. So your argument is that the district court did not abuse her discretion in finding that there was a failure to show on the first element of the injunction inquiry that . . . her finding that they would not succeed on the merits? That's exactly my argument, Your Honor. Again, this is extraordinary relief. They have the burden of proving that likelihood of success, which is the first factor. The Court did an exhaustive analysis of all of the eight digits of that first factor and balanced those digits. This is an excellent order, Your Honor. It's forty-some pages. It's extraordinarily well-researched. It's extraordinarily detailed. Her Honor considered everything in front of her, dutifully followed the law. They quibble with weights on factors, but quibbling is not abusive discretion. This is, you know, as I started with, it's got to be twice exceptional here. As the Court said in future proof, it requires an exceptional circumstance to overturn a lower court's denial of preliminary injunction, which is what we have here, and it requires extraordinary proof to justify a preliminary injunction in the first place. And they have some evidence here and there. They have a mark. They have some phone calls, sure, but the Court below didn't say, you've got nothing. They said, you've got some things. Here's a couple factors in your favor, there's a couple factors in our favor, and there's a couple that are neutral. On balance, that's not enough, and that's the exact same conclusion that this Court upheld in future proof, except even more so because there were more factors in favor of the appellant in future proof, and the Court still upheld a denial of preliminary injunction. Thank you. Thank you, Your Honors. If there's no further questions. All right, counsel. Thank you. My colleague was concerned that I had confused thing in answer to Judge Englehart's question earlier, and the last thing I want to do is confuse at this point. Judge, the logo is obviously what was registered with the United States Patent and Trademark Office, and so in case I inartfully answered, the logo is what is registered, but obviously the protection is much broader than that. And so, when we talk about the mark and Rampart, anything that causes confusion around the logo or the mark is entitled to protection, and that's why we brought up the request for relief. I didn't mean to disclaim protection for a logo if I sounded like I was, because there's certainly that. And I think you may have heard a moment ago, the idea that the protection only extends to the logo and they can dance around or do anything around that is what this Court has said in other cases. They're not going to allow people to add on a word or add on a name and say, well, that's okay. In fact, that's exactly what they counseled against. When they add complementary services, that's actually likely to increase consumer confusion. A consumer might think, well, that's the reason they've got an additional name, and this may not be the best analogy because it's a product, not a service, but Coke and Diet Coke might be expected by a consumer to have different packaging, but they still assume it's the same source, and that's what the Fifth Circuit talks about and the Lanham Act talks about. They're trying to protect the source or the affiliation, the ultimate source or affiliation. And when you have complementary services, property management, multifamily management, that doesn't water down or that doesn't protect from confusion. In fact, it may heighten it because consumers may consume that Grand Park Resources is now doing property management or multifamily management. It actually increases the chance of confusion under this Court's precedent. So, that's the concern and that's what's consistent with this Court's precedent. I think that was one of the areas where the district court honestly but mistakenly misapplied the precedent here in denying the injunction. Your Honor asked about the Google search, and again, I didn't mean to overemphasize that. I do think that's how perhaps some of the tenants that they found, they called Grand Park Resources, but word of mouth is very much the way people are expressing this. The boardroom scenario, Exxon and Entergy are clients of Grand Park Resources, but we've never insinuated that's where the decisions are being made. They're not being made in a boardroom. What survey is Exxon going to hire the surveyor? They're not being decided in the boardroom, and Mr. Butler told the district judge that at the hearing. Those are being made in the field, those decisions, by people with a cell phone and a pickup truck is actually what he told her, and that's how those are being made. The word of mouth issue was discussed by this Court in the Fuji Photo Film case and the Aramco versus Aramco burglar alarm case. That is very much a concern and a way that the confusion can be spread. We briefed that, but I mention that because I think that's very much a part of this case and how the concern is that people will remember Rampart, remembering the Rampart word, the Rampart name, and that's what we've seen in a very short time here. It was just a couple of months after this rebranding effort that our own long-time FedEx driver is confused and these calls are coming in. We mentioned because of what was just said a moment ago by counsel, there's only one Rampart apartment in Baton Rouge. Just so there's no confusion, that there's no proof in the record, there was the one person who put her address in the affidavit, who left her address with the receptionist, but as Judge Englehart knows from his time as a district judge, there's a reason the standards are relaxed in a Rule 65 setting because you don't have the time to assemble all the evidence sometimes. We didn't think it would take more than two months to get a preliminary injunction hearing. We're trying to get the information into the district judge swiftly so that we could get a swift order on maintaining the status quo, but there's only one apartment complex called Rampart and they manage it and that's where the calls came from. Lastly on Rex, I'll just say Rex synthesizes numerous Fifth Circuit cases. We don't just have to rely on Rex, but it does synthesize this Court's decisions on the issue of consumer confusion and I don't think that you could say a fleeting mix-up of names is the law of this circuit. That's not what we came here for. There's more than that and honestly, evidence of actual confusion counts. That's the most important one. That weighed in our favor and to say it should be given little weight, I think it's just a misunderstanding of this Court's precedent. We think that the injunction should have been issued, we'd ask that this Court reverse. All right. Thank you, sir. Thank you very much. I appreciate the assistance of both of you this morning on this case.